PER CURIAM*
This is a suit on an open account seeking to recover the sum of $3,217.50, representing 117 cases of shrimp allegedly sold and delivered to Defendant. From a judgment of the District Court rejecting the demands of Plaintiff and dismissing its suit at its costs, Plaintiff appeals. The evidence reflects Plaintiff through its broker, Schulman-Shepard Company of New Orleans, sold to Defendant 200 cases of shrimp of November 20, 1957 for the price of $5,500.00, which Defendant admittedly received and paid for. It is the contention of Plaintiff that on or about the same date, on the instructions of the same broker, it sold to Defendant 117 cases of shrimp of the value of $3,217.50, which amount is in controversy here. Admittedly, Defendant was invoiced by Plaintiff for the total sum of $8,717.50. However, some days after receipt of said invoice Defendant paid Plaintiff the sum of $5,500.00 and denied owing the balance. Following amicable demand on Defendant this suit was instituted.
Plaintiff’s proof consisted of the testimony of its president, in connection with whose testimony there was offered a statement of account showing the account owed by Defendant to be $8,717.50, on which admittedly a payment of $5,500.00 was made. This statement by Plaintiff was made on the instruction of the broker, the sale had been consummated between Plaintiff and Defendant for said amount. In addition, Plaintiff offered the testimony of the broker, Mr. George Schulman, who related that following the admittedly perfected sale of the 200 cases, upon learning Plaintiff had available an additional 117 cases of similar shrimp en route from Phoenix, Arizona to Louisiana, he contacted Defendant, who agreed to purchase same. Thereupon he notified Plaintiff in California, by telephone, of said fact. According to Mr. Schulman he made the sale to Defendant by telephone in both instances and although he issued a memo to Defendant covering the 200 cases he failed to send him a sales memo covering the 117 cases; that such' omission was not unusual in his business inasmuch as there was already a sales memo for the 200 cases. Though Mr. Schulman testified he confirmed the sale of the 117 cases of shrimp to Defendant through Mr. John P. Donnes, its president, we quote from his testimony a portion thereof, which, to say the least, places some question on the fact as to whether or not a sale was actually consummated. He related:
“Q Your testimony then is your conversation with Mr. Donnes was when the truck was enroute with the 117 cases?
“A That’s right.
“Q And your testimony is that he unqualifiedly bought these 117 cases?
“A He told me that he wanted them.
“Q Now, I don’t mean to play on words, Mr. Schulman. Did he buy them from you?
*707 “A Yes, lie did.”
This questioning took place on cross-examination. On direct examination he had previously testified:
“Q With reference to the 117 cases, do you specifically remember your conversation with Mr. Donnes?
“A Yes, I do.
“Q Would you tell the Court exactly how that sale was perfected?
“A I called Mr. Donnes and told him that we had these 117 cases of 50’s and over the following day, which he told me that he was interested and that he would take them.
“Q How did he tell you that, sir?
“A Well, he told me that he had a spot—
“Q Was this on the telephone?
“A Yes, sir. He told me that he had a spot for them; that he knew that he could get rid of them, that he could sell them or whatever he does, and that he wanted them, which I immediately called San Diego and confirmed the sale.”
Mr. Schulman further testified (though, of course, he had no knowledge thereof) that the shrimp were delivered to Defendant through its agent at Lafayette, Louisiana.
Defendant, through its president, Mr. Donnes, denied it had purchased the 117 extra cases of shrimp from Plaintiff through its broker and further maintained no delivery had been made to its agent of said controverted 117 cases of shrimp. Defendant further offered the testimony of Mr. Louis Prejeant, who operated a frozen foods establishment in Lafayette, Louisiana. Mr. Prejeant related he was the agent for the Defendant in Lafayette, Louisiana; that when the truck arrived with the shrimp he unloaded from the truck and accepted for and on behalf of Defendant 200 cases of shrimp; that in respect to the additional shrimp on the truck, there was a notation on the hill of lading to the driver to call Mr. Schulman as to the delivery or storing of the additional shrimp; that the driver called Mr. Schulman and left the premises in Lafayette without delivering to him, Prejeant, the 117 cases of shrimp in controversy. Mr. Prejeant also related that prior to shipment of Donnes’ order of shrimp he was contacted by Mr. Larry Alphen of Alphen Seafoods, Inc. who informed him he would like to buy a portion of the shrimp Mr. Donnes had coming in from California and to call Mr. Donnes and request his permission to buy some. Prej-eant related he called Donnes and Donnes answered if Mr. Alphen would pay cash and Mr. Prejeant were allowed to issue Al-phen’s check in payment of same as Mr. Alphen customarily handled such purchases of shrimp, it would be all right. According to his testimony this information was transmitted to Alphen who replied, “No, we will have to work it some other way.” So Prejeant, acting on behalf of Defendant, made no sale to Alphen.
It was shown by the testimony that Al-phen and Donnes had a business understanding by which each would at times allow the other to have shrimp which' they had on hand. Donnes denied specifically that he had sold the shrimp to Alphen. Mr. Alphen, testifying by deposition, related he had not received an invoice from either Plaintiff or Defendant covering the purchase of the shrimp but some two months subsequent to the alleged sale from Plaintiff to Defendant Alphen went into bankruptcy and listed Quality Frozen Foods, Inc. as a creditor for a sum which included the amount herein sued upon. Sonie mystery arose as to the reason for his listing Defendant as a creditor for the amount in controversy here, and subsequent thereto Donnes contacted Mr. Alphen and requested that he delete this particular item of shrimp from his statement listing Quality Frozen Foods as creditor hut that he refused to do so inasmuch as in his opinion he either owed Plaintiff or Defendant.
*708 It is Plaintiffs contention it sold and delivered the shrimp to Defendant and that Defendant in turn sold the shrimp to Mr. Alphen, thereby admitting delivery to Defendant itself, and that when Alphen went into bankruptcy Defendant belatedly sought to deny the indebtedness, that the proof tendered on the trial of the case is sufficient to prove the liability of Defendant for the 117 cases of shrimp.
The trial of this case was first had beginning on December 17, 1959, at which the testimony of all the witnesses was introduced except that of Mr. Gil J. Kuhn, president of Plaintiff company, whose deposition was to be taken. Subsequent thereto the entire testimony was lost by the court stenographer and the case was tried anew on Janua’ry 7, 1964, resulting in judgment against Plaintiff and for Defendant. Accordingly, when Mr. Kuhn was called as a witness at the second trial he was aware of the testimony of Mr. Prejeant. Presumably, as no question was made of the fact, his testimony must have been in effect the same as that given at the second trial denying delivery of the 117 cases of shrimp to Defendant at Lafayette, admitting only the delivery of the 200 cases; further, that the 117 cases which are in controversy in this matter were, following conversation with Mr. Schulman, taken elsewhere. This fact seems of importance in considering Mr. Kuhn’s testimony, from which we quote as follows:
“Q Did you receive any delivery slips for this 117 cases as to where they were finally delivered?
“A I don’t have them in my records with me, but I am sure that we have them in our office.
“Q To whom were they delivered?
“A I can’t tell you. That is something you will have to discuss with Mr. Schulman. The sale was made to Quality Frozen Foods.
“Q Were they delivered to Quality Frozen Foods?
“A To the best of my knowledge, yes.
“Q Did somebody sign and receipt for them?
“A I imagine they did, yes.
“Q Shouldn’t this be in this folder that you have ?
“A Not necessarily. It is my privilege to put in this folder what I want.
“Q Wouldn’t this be the most important document of all, Mr. Kuhn?
“A Not necessarily.
“Q Some kind of receipt that the shrimp were received?
“A Not necessarily. Our broker was satisfied. Mr. George Schulman with whom we have had business dealings for some eighteen years was satisfied that Quality Frozen Foods had received the 117 cases of 50’s and over.”
From the above testimony of Mr. Kuhn it is evident Plaintiff had in its possession a signed receipt showing to whom the 117 cases of shrimp in dispute had been delivered. If the receipt showed delivery was made to Mr. Alphen on instructions from Mr. Schulman, Schulman had no authority to act as agent for Quality Frozen Foods, Inc. On the other hand, if in fact Plaintiff had in its possession a delivery receipt executed by Mr. Prejeant on behalf of Quality Frozen Foods acknowledging receipt of the 117 cases, such evidence should have been produced to refute the uncontradicted testimony of Prejeant to the effect only 200 cases were delivered to him.
The question as to whom the 117 cases of shrimp were in fact delivered was never shown by any receipt issued therefor, though admittedly Plaintiff was in possession of such document.
*709 Mr. Schulman’s assertion the crustaceans were delivered to Defendant through his agent in Lafayette is purely his opinion as he did not support same with factual evidence thereof.
The burden of proof rests upon Plaintiff to prove its case by a preponderance of the evidence and inasmuch as we are of the opinion it has not sustained such burden the judgment of the Trial Court is affirmed.
Affirmed.

 This opinion was written by IIERGET, X, now deceased, and concurred in by the remaining members of the court, ELLIS, LOTTINGER, LANDRY and REID, XL